# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

              Plaintiff/Respondent,

v.                             **No. CV 15-00298 RB/LAM**
                                   **CR 09-2968 RB**

NATHAN ARCHULETA,

              Defendant/Movant.

# PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[1]

**THIS MATTER** is before the Court on Defendant/Movant (hereinafter "Movant") Nathan Archuleta's *Petitioner's [Motion and] Memorandum in Support of Motion to Vacate[,] Set Aside, or Correct Sentence Pursuant to 28 U.S.C. §[] 2255* (*Doc. 1*),[2] (hereinafter "§ 2255 motion")*,* and the *Declaration of Nathan Archuleta in Support of Motion to Vacate, Set Aside, or Correct Sentence* (*Doc. 2*), (hereinafter "Declaration"), both of which were filed on April 13, 2015. On May 29, 2015, Plaintiff/Respondent (hereinafter "the Government") moved to dismiss the case without prejudice based on Movant's failure to file a motion in compliance with applicable rules. [*Doc. 10*]. This case was reassigned to the undersigned on June 15, 2015 (*Doc. 12*) and, on August 13, 2015, United States District Judge Robert C. Brack referred the

---

[1] Within fourteen (14) days after a party is served with a copy of these proposed findings and recommended disposition, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such proposed findings and recommended disposition. A party must file any objections with the clerk of the United States District Court for the District of New Mexico within the fourteen (14) day period allowed if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed. Pursuant to Fed. R. Civ. P. 72(b)(2), a party may respond to another party's objections within fourteen (14) days after being served with a copy of the objections.

[2] Hereinafter, all documents from Case No. CIV-15-0298 cited in this decision will be designated as "*Doc.*" followed by their docket number.

claims raised in this case to the undersigned for proposed findings and a recommended disposition, and a hearing, if necessary (*Doc. 15*).   Also on August 13, 2015, this Court denied the Government's motion to dismiss, elected to treat Movant's "memorandum" as a § 2255 motion, and ordered the Government to respond to it.   [*Doc. 16*].   Pursuant to extensions granted by the Court, the Government timely filed a ***Response in Opposition*** (*Doc.* 22) to the § 2255 motion on September 17, 2015.   Movant filed a reply to the Government's response on October 19, 2015. [*Doc. 24*].   Having considered the parties' submissions, relevant law, and the record in both this case and in Movant's underlying criminal case (Case No. CR-09-2968), the undersigned recommends, for the reasons set forth below, that the claims made in Movant's § 2255 motion (*Doc. 1*), ***with the exception of the claim that counsel failed to timely convey Movant's acceptance of a plea offer to the prosecution***, be **DENIED** and that those claims be **DISMISSED with prejudice**.

In his § 2255 motion, Movant raises several claims that all relate to his assertion that he received ineffective assistance of counsel in both his criminal trial and in his appeal from the conviction.   Those claims are, effectively:   (1) that his counsel failed to communicate Movant's acceptance of a plea offer in a timely manner, leading to withdrawal of that offer (*Doc. 1* at 10-13); (2) that counsel also failed to advise Movant of his option to enter an open plea to a four-count indictment (*id.* at 12-13); (3) that his subsequent counsel also failed to advise him of the open plea option (*id.* at 13-14) ; (4) that counsel failed to seek exclusion of the testimony of a gang expert pursuant to Fed. R. Evid. 704(b) (*id.* at 14-18); (5) counsel failed to inform the sentencing court that state court charges might be pursued and could result in imposition of a consecutive sentence (*id.* at 20-21); and (6) counsel's appellate advocacy was compromised by his campaign for District Attorney (*id.* at 18-20).   Movant also requests that he be allowed to conduct discovery on his

2

claims, that he be granted an evidentiary hearing, and that the Court either vacate his conviction and grant a new trial, or set aside or correct his sentence.   *Id.* at 1, 21-22.

## I.   Factual and Procedural Background

In 2009, Movant was a member of a gang known as "Sureños."[3]   In July 2009, Movant solicited two women to obtain methamphetamine from a source in Mexico, and to transport it across the border into the United States.   On July 2, 2009, those two women, along with a man who had agreed to drive them to and from Mexico to obtain the drugs, were arrested while attempting to reenter the United States, when a Border Patrol agent was alerted by a drug-sniffing dog and discovered methamphetamine during a pat-down search of one of the women.   The arrested parties were thereafter charged with various crimes, to which they each pled guilty in accordance with plea deals negotiated with the Government.   Movant remained at large, and was not arrested until November 5, 2009.   On that date, Movant engaged police in a high-speed chase near Belen, New Mexico after a New Mexico State Police officer attempted to stop his vehicle to issue him a traffic citation.   Movant was arrested after his vehicle crashed and the air bags deployed.   Movant struggled with, and made threats against, the officers arresting him, and was found to be in possession of, among other things, two handguns, small quantities of methamphetamine and marijuana, drug paraphernalia, five cell phones, and a fake New Mexico driver's license.

On December 3, 2009, a New Mexico grand jury returned a four-count superseding indictment against Movant and five other defendants.[4]   [*CrDoc. 99*].   On July 22, 2010, the

---

[3] All of the facts in this paragraph were set forth, in different form, in pages 3-6 of a June 4, 2010 Memorandum Opinion and Order, granting defendants' motions to sever, in the underlying criminal case (Case No. CR-09-2968 RB).   *See* [*CrDoc. 205*].   Hereinafter, all cited documents that were filed in the criminal case will be designated as "*CrDoc.*" followed by their docket number.

[4] A previous indictment had been issued on October 8, 2009 (before Movant was arrested), charging two

grand jury returned an eight-count third superseding indictment, which charged Movant with six crimes. [*CrDoc. 233*].   Since all but one of Movant's co-defendants pled guilty to the charges against them, only Movant and Daniel Munoz remained as defendants.   However, the criminal cases against Movant and Mr. Munoz were severed by the Court on June 4, 2010.   [*CrDoc. 205*]. Movant did not enter into a plea agreement with the Government and, on August 16, 2010, after a trial, a federal jury found him guilty on four of the six criminal counts charged against him. [*CrDoc. 289*].   Those counts were:   (Count 1) conspiring to possess with intent to distribute methamphetamine on July 2 and 3, 2009; (Count 2) possessing with intent to distribute methamphetamine on July 2, 2009; (Count 5) being a felon in possession of a firearm on November 5, 2009; and (Count 7) possession of methamphetamine on November 5, 2009.   *Id*. On January 12, 2012, the Court sentenced Movant to prison for:   360 months on Counts 1 and 2; 120 months on Count 5; and 12 months on Count 7, with all sentences to run concurrently. [*CrDoc. 392*].   Movant appealed his convictions to the Tenth Circuit Court of Appeals, which affirmed (with one judge dissenting) on December 17, 2013.   *United States v. Archuleta*, 737 F.3d 1287 (10th Cir. 2013).   The United States Supreme Court denied Movant's petition for writ of certiorari on June 23, 2014.   *Archuleta v. United States*, 134 S. Ct. 2859 (2014).   Movant timely filed his § 2255 motion on April 13, 2015.[5]

_____

counts against five defendants.   *See* [*CrDoc. 205* at 2].

    [5] A motion under 28 U.S.C. § 2255 is timely if it is filed within one year from the date the conviction becomes final.   *See* 28 U.S.C. § 2255(f)(1).   The Tenth Circuit Court of Appeals has held that "the one-year limitation period for filing for federal post-conviction relief does not begin to run until after the United States Supreme Court has denied review."   *Rhine v. Boone*, 182 F.3d 1153, 1155 (10th Cir. 1999).   Here, the United States Supreme Court denied Movant's petition for writ of certiorari on June 23, 2014.   Since Movant filed his motion within one year of that denial, on April 13, 2015, his motion is timely.

## II.   Analysis

On December 14, 2009, Mario Carreon was appointed by the Court to represent Movant in the criminal case against him.   [*CrDoc. 114*].   On February 4, 2010, at Mr. Carreon's request, his appointment as counsel for Movant was terminated by the Court.   [*CrDoc. 146* and *148*].   The following day, the Court appointed Mark D'Antonio as Movant's new criminal defense counsel. [*CrDoc. 149*].   Mr. D'Antonio represented Movant through trial and part of his appeal of the conviction, but moved to withdraw as Movant's counsel in December 2012 as he had been elected to serve as District Attorney of Dona Ana County, New Mexico in November 2012, and would assume the duties of that office on December 28, 2012.   *See* Mark D'Antonio profile at http://donaanademocrats.com/county/ (site last visited on March 21, 2016).   Mr. D'Antonio's motion to withdraw was granted by the Tenth Circuit Court on January 7, 2013.   [*CrDoc. 438*]. On the same day, Jill M. Wichlens, from the District of Colorado Federal Public Defender's Office, was appointed to replace Mr. D'Antonio as Movant's appellate counsel.   *Id*.   Although Mr. D'Antonio had filed an initial brief to which the Government had responded, Ms. Wichlens was able to fully re-brief the issues on appeal and to argue the appeal on Movant's behalf.   In his § 2255 motion, Movant asserts several claims of ineffectiveness of counsel against Mr. Carreon and Mr. D'Antonio.   In response, the Government asserts that none of Movant's ineffectiveness claims is meritorious.   *See* [*Doc. 22* at 7].   In his reply, Movant essentially reiterates his original argument without specifically contesting the Government's fact statements in its response/answer.[6]   [*Doc. 24*].

---

[6] The Court notes that Movant's reply brief was not accompanied by a statement of facts that was sworn to under penalty of perjury, as was the Declaration.   The significance of that is, as will be discussed in greater detail hereinafter, that any new fact statements made in the reply brief will not be treated as statements under oath.   *See* footnote 7, *infra*.

## A.   Ineffective Assistance Claims Against Mr. Carreon

Movant claims that Mr. Carreon's representation prior to trial was ineffective because Mr. Carreon's delay in conveying Movant's acceptance of a 15-year plea offer to the Government resulted in the withdrawal of the plea offer, and because Mr. Carreon failed to advise Movant that he could have pled guilty to a four-count indictment and received a sentencing decrease by doing so. *See* [*Doc. 1* at 2-4].   In response, the Government contends that no formal plea offers were made to Movant, and that informal discussions of possible pleas included the issue of Movant testifying against his co-defendant, Munoz, which Movant at all times refused to do.   [*Doc. 22* at 10-11, ¶¶ 14, 20].

In evaluating an ineffective assistance of counsel claim, an attorney's performance is measured by a two-prong standard established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984).   To prevail on an ineffective assistance claim under the *Strickland* standard, Movant must show that:   (a) his attorney's performance was deficient because it fell below an objective standard of reasonableness, and (b) he was prejudiced by the attorney's deficient performance.   *Id.* at 687.   Both showings must be made to satisfy the *Strickland* standard.   *Id.*   To demonstrate unreasonable performance, Movant must show that his attorney made errors so serious that his performance could not be considered "reasonable[] under prevailing professional norms."   *Id.* at 688.   To demonstrate prejudice, Movant must show a reasonable probability, sufficient to undermine confidence in the outcome, that the result of the proceeding would have been different but for his attorney's alleged unprofessional errors.   *Id.* at 694.   Finally, a court need not address both prongs of the *Strickland* standard if the Movant makes an insufficient showing on either one of the prongs.   *Id.* at 697.   In assessing ineffectiveness claims, "judicial scrutiny of counsel's performance must be highly deferential."

*Strickland*, 466 U.S. at 689.   Judicial review requires "that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, ands to evaluate the conduct from counsel's perspective at the time."   *Id*.   Thus, a reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."   *Id*.

Here, Movant claims that Mr. Carreon's actions in connection with plea negotiations were unreasonably unprofessional and caused Movant to miss opportunities to reduce his sentence through acceptance of a plea bargain.

### 1.   Failure to Communicate Plea Acceptance

Movant contends that Mr. Carreon delayed in communicating Movant's acceptance of a 15-year plea offer, which caused the offer to be withdrawn.   In the Declaration[7] submitted in support of his § 2255 motion, Movant makes the following sworn statements:

> 1.   On December 12, 2009, Attorney Mario Carreon was appointed to represent me in my federal case.   [S]hortly after that appointment, Carreon advised me during a meeting that the government extended a fifteen year plea offer in an attempt to timely resolve the court action.   At that time, Carreon advised me that the government could prove, in his opinion, two of the four counts upon which I was charged and those counts were three and four.   Carreon allowed me some time to think it over at which time, I communicated the offer to my family and friends for advice regarding its acceptance o[r] rejection.

---

[7] The Declaration is signed and dated by Movant under the following statement:   "I hereby declare under penalty of perjury that the foregoing and the statements made in the § 2255 motion are true and correct."   [*Doc. 2* at 4].   Unsworn declarations that are dated and signed "under penalty of perjury" are sufficient to satisfy a federal requirement for a sworn oath, affidavit, or declaration.   28 U.S.C. § 1746.   However, statements made in a separate document, particularly one containing primarily argument rather than fact, will not be treated as sworn statements of fact.   *See, e.g., Enzo Biochem, Inc. v. Gen-Probe, Inc.,* 424 F.3d 1276, 1284 (Fed. Cir. 2005) ("Attorney argument is no substitute for evidence"); *Mel Williamson, Inc. v. United States*, 229 Ct. Cl. 846, 848 (1982) ("Argument is not fact").   Moreover, statements of fact in affidavits or declarations "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."   Fed. R. Civ. P. 56(c)(4).   The Government's response in opposition to the § 2255 motion includes a similar statement by David Williams, Assistant U.S. Attorney, stating "I declare under penalty of perjury that the foregoing answer is true and correct, and that all factual allegations are true and correct based on my knowledge, information, and belief."   [*Doc. 22* at 26].   As will be discussed in more detail hereinafter, the Court does not consider this statement to be an effective "oath" under either Rule 56 or 28 U.S.C. § 1746.   *See Sheinkopf v. Stone*, 927 F.2d 1259, 1271 (1st Cir. 1991) (affidavit made upon information and belief does not satisfy Rule 56).

2.  After these discussions, I informed Carreon that I wished to accept the fifteen year offer.  Carreon explained that he would speak with the U.S. Attorney when he got a chance.  It, however, was several weeks before me [sic] and Carreon spoke again regarding the offer.  At that time, Carreon apologized and stated that the fifteen year offer had come and gone before he could solidify it.  Carreon[] explained that a different offer had been made which was less favorable and called for eighteen years.  I was upset with Carreon because after speaking with him regarding the fifteen year plea offer I'd set my mind to the fifteen year term and at night calculated the amount of time I would serve with good behavior and likewise communicated that to my family.  [S]o to hear that the offer amounted to a hoax, I began to argue with Carreon who admitted that he'd neglected to express my intention to accept the offer.  Carreon added that he was also upset, but upset with the U.S. Attorney for allowing plea negotiations to become frustrated.

*Id*. at 1-2 (¶¶ 1, 2).

The Government's response to these allegations is contained in its "*General Answer*" to Movant's declaration, which is contained within its memorandum (*Doc. 22* at 7-8) submitted in response to the § 2255 motion:

1.  The United States admits that Mario Carreon was appointed to represent Archuleta as stated in paragraph 1.  It denies that it offered Archuleta a fifteen-year plea offer.  All discussions of plea offers required Archuleta to testify as a witness in the trial of co-defendant Munoz. Archuleta refused to testify against Munoz.

2.  The United States was not a party to the communications between Archuleta and Mr. Carreon as alleged in paragraphs 2, 3, and 4, and denies the allegations for that reason.

*Id*.  At the end of the Government's response brief is a "declaration" by its current counsel, David Williams, purporting to endow the facts set forth in the document with the power of sworn statements.  *Id*. at 26.  However, the Court finds that the statement is wholly insufficient to serve that purpose and, specifically, that the statement fails to effectively support any of the factual statements set forth in the response/answer.  Indeed, such a declaration at the end of a 26-page memorandum containing both factual and legal arguments is clearly inappropriate, as only statements of fact may be verified under oath.  Moreover, many of the factual statements in the

brief are made in the context of argument, making it seem as though counsel is verifying the argument itself.   Most significant, however, is that many (if not most) of the fact statements made cannot be made by Mr. Williams, as he was not even counsel for the Government when the relevant events took place.   It is quite clear, on the face of the statements themselves, that Mr. Williams does not, and could not, have "personal knowledge" of the facts stated, which makes his attempt to swear to them inappropriate.[8]   *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."); *see also* footnote 7, *supra*.   For example, Mr. Williams states, in the "answer" portion of the brief, that "Mr. Carreon presented all informal [plea] offers to Archuleta. Archuleta rejected all offers."[9]   [*Doc. 22* at 10, ¶ 13].   This statement directly contradicts one of Movant's sworn fact allegations, despite there being no possibility that Mr. Williams could have personal knowledge of the truth of the statement, since he was not a party to conversations between Mr. Carreon and Movant.   *See* ¶ 2 of the Government's "*General Answer*" [*Doc. 22* at 8], quoted above.

Movant's declaration meets the requirements of 28 U.S.C. § 1746 (providing that requirement of a sworn declaration or affidavit is satisfied by a writing signed "as true under penalty of perjury") and Fed. R. Civ. P. 56(c)(4) (based on personal knowledge).   It thus raises an issue of fact regarding the events he describes, which has not properly been rebutted by the Government.   If there are responses to the facts alleged by Movant of which the Government is

---

[8] The mere fact that the verification purports to be based on Mr. Williams' "knowledge, information, and belief" indicates that the verified statements are not all based on his personal knowledge.

[9] Incredibly, earlier in its "answer," the Government specifically denied Movant's statements regarding his conversations with Mr. Carreon because "[t]he United States was not a party to the communications between Archuleta and Mr.Carreon."   *See* [*Doc. 22* at 8, ¶ 2].   Thus, the Government both denies knowledge of the conversations that took place between Mr. Carreon and Movant, and states "under penalty of perjury" that Mr. Carreon presented all informal offers to Movant and Movant rejected them.

aware, those facts should have been submitted to the Court in the form of affidavits signed under oath by those with personal knowledge of them, such as Mr. Carreon or Stephen Wong, who was the Government prosecutor when the events allegedly occurred.   The Government's failure to do so leaves the Court with no option but to allow Movant an opportunity to prove his allegations in an evidentiary hearing.

The Court is well aware that the Government's position is that Movant cannot prevail on this claim because no "formal" offers had been made.  *See* [*Doc. 22* at 14-16].   However, its failure to have someone with personal knowledge of Movant's plea negotiations swear to that fact means that there remains a fact issue as to whether or not a "formal" offer was or was not made. Movant simply says he received "an offer," and the Government did not effectively rebut that statement, either as to whether or not any offer was made or as to whether such an offer was "formally" made.   Neither Mr. Williams' assertion that no formal offers were made, nor his "Counterstatement of Facts," which includes both a recitation of the United States Attorney's Office's "policies" during the relevant time period, and a description of the plea negotiations in Movant's criminal case (*id*. at 8-12), are based on his personal knowledge.[10]   Such statements are simply insufficient to satisfy the standard for an affidavit or declaration, and cannot be relied upon by the Court.[11]

---

[10]  In the Government's argument that Movant cannot prove the *Strickland* prejudice prong as to this claim, it states that, had a formal plea offer been made as claimed by Movant, "the United States would have withdrawn the offer after Munoz pled guilty."   [*Doc. 22* at 16].   However, as Movant points out in his reply brief (*Doc. 24* at 5), Mr. Munoz did not plead to the charges against him until *after* Movant's jury trial, which concluded on August 16, 2010.   *See* [*CrDoc. 289*] (Archuleta jury verdict); s*ee also* [*Doc. 301* in Case No. CR-09-2968 RB-4] (clerk's minutes for change of plea hearing by Munoz held August 30, 2010).   As such, the Government's statement is neither relevant to the prejudice issue, since the offer clearly would not have been withdrawn on that basis prior to Movant's trial, nor is it accurate, which is *precisely* why sworn testimony "must be made on personal knowledge." Fed. R. Civ. P. 56(c)(4).   The chronology of Movant's and Mr. Munoz's trial and plea agreement is likely something Mr. Williams would have known had he been personally involved in the proceedings leading up to Movant's conviction.

[11]  Presumably, it would not have been difficult to obtain sworn statements regarding United States Attorney's Office "policies" from the "supervisor" and the "chief of the Criminal Division" to whom the Government

In any event, the Court is not convinced that, if proven, a criminal counsel's failure to convey his client's acceptance of even an "informal" offer could be disregarded as insufficient to raise a Sixth Amendment ineffectiveness claim under *Missouri v. Frye*, 132 S. Ct. 1399 (2012).[12] If the allegations made by Movant are true, this Court would be hard-pressed not to find counsel's conduct to be unreasonable under professional norms.   Whether or not Movant could satisfy the prejudice prong of the *Strickland* test is another matter, which may also be considered at the evidentiary hearing if the evidence shows that an offer was made and that counsel failed to convey Movant's acceptance of it in a timely manner.   Had the Government simply submitted a statement by one with personal knowledge that detailed whether and what plea offers were made to Movant, those fact statements may have allowed the Court to render a decision, such as it did in *United States v. Jack*, No. CV-13-738 WJ/LAM, 2014 WL 10793220 (D. N.M. April 7, 2014) (unpublished), *appeal dismissed*, No. 15-2001, 2015 WL 6685466 (10th Cir. November 3, 2015), to the effect that the Movant's claim regarding a plea offer was simply too tenuous to satisfy the *Strickland* two-prong test.   At the very least, an affidavit from Mr. Carreon could and should have been submitted regarding the plea negotiation process.[13]

---

refers in paragraphs 2 and 3 of its "counterstatement."   [*Doc. 22* at 8-9].

[12] The *Frye* case is often cited for the proposition that only "formal" plea offers are required to be communicated by defense counsel to the defendant.  *See Frye*, 132 S. Ct. at 1408.  However, the facts before the Court in *Frye* involved a defense counsel's failure to inform the defendant of formal pleas.  As such, the *Frye* Court did not address the issue of whether it may be ineffective assistance for counsel to fail to communicate an informal plea offer to his client.  *Id.* ("Any exceptions to that rule [defense counsel has a duty to communicate formal offers from the prosecution] need not be explored here, for the offer was a formal one with a fixed expiration date.").Nor, significantly, did that Court address the issue presented in this case, which is whether an ineffectiveness claim may be predicated on counsel's failure to timely communicate his client's acceptance of an informal (or, possibly, formal) plea offer to the prosecution.

[13] This does not mean that there would have been no need for an evidentiary hearing had Mr. Carreon disputed Movant's claim that he failed to timely convey Movant's acceptance of an offer to the prosecutor, since that issue of fact would still need to be resolved.  *See Dolence v. Flynn*, 628 F.2d 1280, 1281 (10th Cir. 1980) (trial cannot be had solely on affidavits), citing *Collins v. Hladky*, 603 F.2d 824, 825 (10th Cir. 1979).  However, if the Government had submitted affidavits that detailed the plea negotiation process in this case that were not directly disputed by Movant, an evidentiary hearing may not have been necessary.

Nonetheless, Movant will have no easy time establishing this claim at a hearing.   His current self-serving assertion that he wanted to accept a plea offer is belied by his conduct and statements leading up to trial.   At a hearing on the parties' joint motion to continue the jury trial, Mr. Carreon stated that he presented at least two informal plea offers to Movant for consideration, both of which Movant rejected.   [*Doc. 154* at 4-5].   Movant also appeared in court at this hearing, both professing his innocence and stating that he would not lie and testify falsely against Mr. Munoz just to get a good plea bargain.[14]   A defendant who rejects all plea offers and steadfastly proclaims his innocence cannot show ineffective assistance of counsel in plea negotiations by asserting, post-conviction, that he was willing to accept a plea deal.   *See, e.g., United States v. Gonzalez-Rivera*, 217 Fed. App'x 166, 170 (3rd Cir. 2007) (unpublished) (claim by defendant, who maintained his innocence and refused to plead guilty during plea negotiations, that he would have accepted a plea offer is "far too speculative" to establish prejudice).   However, if Movant can establish that he, in fact, would have accepted a plea offer but for his counsel's failure to communicate that acceptance, he may well be able to establish at least the deficient performance prong of *Strickland*.

## 2.  "Open Plea" Claim

Movant's second, related, claim against Mr. Carreon is that he failed to inform Movant that he could enter an open plea to the charges against him, without having to cooperate in any way with the prosecution.[15]   Movant contends that, had his counsel informed him of this option, he

---

[14] In court, though not under oath, Movant specifically denied any involvement in the charged crimes and stated that he knew of no facts with which he could bargain and, therefore, he would "rather spend [his] life in jail than tell a lie that would possibly put a man in jail for ten years, five years, whatever it may be."   [*CrDoc. 154* at 17].

[15] "Generally, an open plea is a guilty plea made without the benefit of a plea agreement with the government."   *United States v. Williams*, No. 06-20047-01-CM, 2012 WL 6554424, at *3 (D. Kan. Dec. 14, 2012) (unpublished).

could have pled guilty without testifying against Munoz, and still receive a three-point reduction in his sentence based on his acceptance of responsibility.   The Government argues that, outside of the Third Circuit in *Booth*, no jurisdictions have held that informing a defendant of the open plea option is required of defense counsel.   It is true that the *Booth* case is not controlling in this jurisdiction, as well as that the Tenth Circuit has never specifically reviewed this issue.   However, as proposed in *Strickland*, 466 U.S. at 697 (courts need not consider deficiency of counsel's performance if it is easier to dispose of claim based on lack of prejudice), the Court finds it more expedient to consider the easier issue of whether failure to so inform the Movant in this case resulted in prejudice to him.   In fact, it did not.   First, Movant had previously entered just such a plea in another criminal case (Case No. CR-05-2045 LH) and, therefore, cannot contend that he was unaware of that option.   *See* [*Doc. 22* at 11, ¶ 22 and at 18].   Even more significantly, Movant's claim on this issue, as with the claimed plea offer, is not supported by the facts that he maintained his innocence throughout the plea negotiations and rejected every suggested plea. The Tenth Circuit has indicated that "failure to communicate a plea offer would only be prejudicial if the record shows the defendant would have been reasonably likely to accept the plea offer, had he known of it."   *Calvert v. Dinwiddie*, 461 Fed. App'x 729, 733 (10th Cir. 2012) (unpublished). Where a defendant's "primary defense was that he was factually innocent," he testified that he was innocent, and he rejected previous plea offers, "no reasonable jurist could debate [that] the [state court] misapplied the prejudice standard set forth in *Strickland*," when it denied defendant's claim of ineffective assistance.   *Id*. at 735.   The same is true in the present case.

## B.   Ineffective Assistance Claims Against Mr. D'Antonio

Movant similarly asserts that Mr. D'Antonio failed to inform him of the option to enter an open plea.   For the reasons that were discussed in connection with the same claim against

Mr. Carreon, the Court finds this argument against Mr. D'Antonio to be without merit.   Each of Movant's other claims against Mr. D'Antonio will be discussed separately.   Regarding his claims of ineffective assistance by Mr. D'Antonio, the Court reiterates that Movant must prove the existence of both unreasonable performance and prejudice, and that ineffectiveness claims are reviewed with a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."   *Strickland*, 466 U.S. at 687-89.

### 1.   Failure to Object to Gang Expert Testimony Based on Rule 704(b)

Prior to trial, Mr. D'Antonio filed a motion in limine to exclude "gang expert" testimony (*CrDoc. 183*), and two hearings were held on that issue (*CrDoc. 261* and *269*).   At trial, Mr. D'Antonio again objected to the testimony, specifically asserting that Officer Paul Lujan did not qualify as a gang expert, and that gang testimony was irrelevant.   *See Archuleta*, 737 F.3d at 1292.   All of these objections were denied, and Officer Lujan was allowed to testify at Movant's criminal trial.   Movant's appeal of his conviction focused on Officer Lujan's testimony, and Movant argued that admission of that testimony violated Federal Rules of Evidence 403, 702, and 704(b).   The convictions were affirmed by the Tenth Circuit Court of Appeals, although one judge dissented on the ground that "significant portions of" Officer Lujan's testimony were "irrelevant and inflammatory," and thereby violated Rule 403 of the Federal Rules of Evidence. *Archuleta*, 737 F.3d at 1299-1300 (Holloway, J., dissenting).[16]   Movant's petition for certiorari to the United States Supreme Court was denied.   In his current § 2255 motion, Movant asserts that Mr. D'Antonio's failure to object to Officer Lujan's testimony pursuant to Fed. R. Evid. 704(b) constitutes ineffective assistance of counsel.   [*Doc. 1* at 14-18].   This Court does not agree.

---

[16] Judge Holloway specifically did not address the issue of whether or not Officer Lujan's testimony violated Fed. R. Evid. 704(b), which is Movant's current claim.   *See Archuleta*, 737 F.3d at 1303 n.4 (Holloway, J, dissenting).

Rule 704(b) provides that "[i]n a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense.  Those matters are for the trier of fact alone." Movant contends that Officer Lujan's testimony was "the functional equivalent of an opinion that [Movant] in fact had the mental state required for guilt: (that there would be severe penalties if a lower ranking solider [sic] in the gang were to broker a deal absent the superior gang member's approval."  [*Doc. 1* at 16].  Movant made precisely this argument to the Tenth Circuit in his appeal from his conviction.  "On appeal, Archuleta contends that admission of a gang expert's testimony violated Federal Rules of Evidence 403, 702, and 704(b)."  *Archuleta*, 737 F.3d at 1290.  With respect to the Rule 704(b) claim, the appellate court conceded that Officer Lujan's response to a hypothetical that matched the facts of the charges against Movant "probably crossed that [704(b)] line."  *Id*. at 1298.  Nonetheless, the Tenth Circuit Court concluded that Movant had failed to establish "plain error"[17] under Rule 704(b), noting that there was ample other evidence of his knowledge besides Officer Lujan's:

> All three of [his] coconspirators testified to Archuleta's key role in the planning and execution of the conspiracy.  Thus, even in the absence of the challenged response by Lujan to the hypothetical question, there was more than sufficient evidence presented to establish that Archuleta had knowledge, and in fact was key in the organization, of the drug-smuggling scheme.  Archuleta has not shown how this testimony affected his substantial rights, and reversal on these grounds is not warranted under plain error review.

---

[17] A "plain error is one that is "clear or obvious under current law" and must affect "substantial rights." *United States v. Sadler*, No. 14-8005, 2016 WL 787619, at *9 (10th Cir. Mar. 1, 2016) (unpublished) (internal quotation marks and citations omitted).  If an appellant satisfies this standard, the appellate court "may exercise discretion to correct the error if [] it seriously affects the fairness, integrity, or public reputation of judicial proceedings."  *Id*.  Movant was required to establish plain error on appeal because his argument that Officer Lujan's testimony violated Rule 704(b) had not been made at trial.  *See Archuleta*, 737 F.3d at 1297.  As the plain error standard of review is substantially similar to the ineffectiveness of counsel standard, the Court deems it of no consequence that the Tenth Circuit considered Movant's claim under that standard rather than pursuant to the abuse of discretion standard that is typically applied to errors asserted under Rule 704(b).  *See, e.g., United States v. Becknell*, 601 Fed. App'x 709, 714 (10th Cir. 2015) (unpublished) (applying abuse of discretion standard to Rule 704(b) claim).

*Id.* at 1299.   Thus, even if Officer Lujan's testimony violated Rule 704(b) and Mr. D'Antonio erred in not objecting to it on that specific basis, Movant cannot show that he was prejudiced by the testimony.   Without a showing of prejudice resulting from counsel's performance, an ineffectiveness claim is without merit.   In other words, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."   *Strickland*, 466 U.S. at 691, citing *United States v. Morrison*, 449 U.S. 361, 364-65 (1981)   The Tenth Circuit has already determined that, had Officer Lujan's testimony been excluded based on Rule 704(b), the outcome of the trial would still be a conviction.   Moreover, claims raised in a direct appeal from a sentence may not be raised in a collateral action under § 2255.   *United States v. Warner*, 23 F.3d 287, 291 (10th Cir. 1994), citing *United States v. Cook*, 997 F.2d 1312, 1318 n.6 (10th Cir. 1993).   Accordingly, Movant's ineffectiveness claim based on Mr. D'Antonio's failure to object to Officer Lujan's testimony pursuant to Rule 704(b) is without merit.[18]

## 2.   Failure to Advise Trial Court of Potential State Sentence

Movant also asserts that Mr. D'Antonio erred by failing to inform the trial judge at sentencing that state charges were pending against Movant that could potentially be imposed consecutively to the federal court's sentence.   According to Movant, such notice would have resulted in a lesser federal sentence, and counsel's failure to address that issue at sentencing constitutes ineffective assistance of counsel.   There are a number of problems with this assertion. Principally, the trial judge was aware of the potential of state court charges against Movant, both

---

[18]   The Court notes, as well, that Mr. D'Antonio did vigorously attempt to exclude Officer Lujan's testimony on several other grounds, all of which were rejected by the trial court.   Thus, it would be difficult for Movant to show that, had the Rule 704(b) objection been made, it would have been successful.   If the objection were not successful, it would also be difficult to show that "there is a reasonable probability that, but for" Mr. D'Antonio's failure to object on that basis, "the result of the proceeding would have been different" (*Strickland*, 466 U.S. at 694), and this Court cannot see how the Tenth Circuit's decision on Movant's Rule 704(b) claim would have been any different had the objection been made, denied, and an abuse of discretion standard applied to that decision.

from the pre-sentence report and from discussions that took place at sentencing.   At the sentencing hearing on January 12, 2012, the judge specifically asked both the prosecutor and Mr. D'Antonio about the status of the state charges against Movant.   [*CrDoc. 476* at 41-42]. The prosecutor indicated that, although a complaint had been filed in the state court, that complaint was ineffective because "it was not indicted," and so there were no pending state charges.   *Id.* at 43.   Mr. D'Antonio told the judge that it was his "understanding" that the State would not proceed on their charges "if they were satisfied with the [federal court] sentence," but also indicated that he did not know that "definitively."   *Id.* at 42-43.   However, based on a statement by the probation officer who prepared the pre-sentence report, and on a review of the state court's website, the Court determined that, in fact, the charges against Movant had been indicted and, therefore, were still pending.   *Id.* at 44-45.   As the trial judge was aware at the time of sentencing that state court charges were pending and could still be pursued against Movant, no prejudice resulted from any failure by Mr. D'Antonio to inform the Court of the state charges.[19]   Moreover, the sentence imposed was, contrary to the prosecution's request, at the bottom of the "360 months to life" sentencing guideline for two of Movant's convictions.   *Id.* at 59.   Therefore, Movant's claim that his sentence would have been lessened if the sentencing judge was aware of the pending state claims is, at best, speculative.   Movant has failed to show that this alleged error by counsel caused him prejudice, and his claim is therefore without merit.

### 3.   Conflict of Interest

Finally, Movant claims that Mr. D'Antonio had a conflict of interest that precluded him from effectively representing Movant, which was that he was seeking election to the office of

---

[19]   In any event, none of those involved in the trial proceedings at that time could have predicted whether or not the state court charges would be successfully pursued or whether any sentence imposed for them would be consecutive to the federal sentence.   As such, it is unlikely that Mr. D'Antonio's statement of his knowledge at that time would be considered unreasonable.

District Attorney of Dona Ana County while representing Movant.  According to Movant's § 2255 motion, Mr. D'Antonio failed to fully advocate on Movant's behalf because he was fending off claims by his opponent in the election that he would be "soft on crime."  Movant specifically claims that Mr. D'Antonio did not timely file the notice of appeal from Movant's conviction and sentence, filed a one-page appeal brief, then subsequently filed an amended brief with a deficient statement of facts, failed to file a reply brief, and ultimately withdrew from representing Movant in the middle of his appeal to the Tenth Circuit.[20]

The Supreme Court has held that a limited presumption of prejudice applies to ineffectiveness claims based on counsel's conflict of interest:

> Given the obligation of counsel to avoid conflicts of interest and the ability of trial courts to make early inquiry in certain situations likely to give rise to conflicts, see, e.g., Fed. Rule Crim. Proc. 44(c), it is reasonable for the criminal justice system to maintain a fairly rigid rule of presumed prejudice for conflicts of interest.  Even so, the rule is not quite the per se rule of prejudice that exists for the Sixth Amendment claims mentioned above.  Prejudice is presumed only if the defendant demonstrates that counsel "actively represented conflicting interests" and that "an actual conflict of interest adversely affected his lawyer's performance."

*Strickland*, 466 U.S. at 692, citing *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980).  Here, however, Movant has neither alleged nor shown that Mr. D'Antonio "actively represented conflicting interests."  Instead, Movant's claim is more in the nature of an "appearance of impropriety" allegation.[21]  Additionally, Movant merely speculates that the issues he has with Mr. D'Antonio's appellate representation (*e.g.,* poor appellate briefing) resulted from counsel's desire to win the

---

[20] Movant also contends that Mr. D'Antonio failed even to inform him of both the election and his withdrawal as counsel, though it is not clear what prejudice he claims resulted from that fact.

[21] Attorneys have long been exhorted to avoid even the appearance of impropriety in their professional conduct.  *See, e.g., United States v. Troutman*, 814 F.2d 1428, 1442 (10th Cir. 1987) ("Canon 9 of the ABA Code states, 'A lawyer should avoid even the appearance of professional impropriety'").  Thus, even where no actual conflict of interest exists, attorneys should avoid situations in which their professional judgment might "appear" to be compromised.  Movant's assertion that Mr. D'Antonio failed to represent him effectively because he did not want to appear "soft on crime" while seeking election to a prosecutorial office is just such a claim.  However, that claim does not rise to the level of ineffectiveness of counsel, as such claims "require that an 'actual' conflict must be established." *United States v. Gallegos*, 39 F.3d 276, 279 (10th Cir. 1994), citing *Cuyler v. Sullivan*, 446 U.S. 335 (1980).

District Attorney election.  It is just as likely that the facts alleged indicate electronic filing problems resulting from "excusable neglect," as was found by this Court when it granted an extension for the filing of Movant's notice of appeal (*CrDoc. 412*), or that they indicate simple negligence arising from an overly busy practice.

In any event, whether or not Mr. D'Antonio's representation of Movant on appeal was unreasonable under professional standards, any prejudice that may have resulted from that representation was eliminated when Movant was appointed new counsel, Ms. Wichlens, in time for her to file her own briefs and to argue the case on Movant's behalf.  Movant has not asserted any claim that Ms. Wichlens' representation of him was ineffective and, as such, any errors that may have occurred prior to her appointment could not have materially affected the outcome of the appeal.  Without a showing of prejudice suffered as a result of counsel's errors, an ineffectiveness claim must fail.

## III.   Movant's Requests for Discovery, Evidentiary Hearing, and Counsel

In his § 2255 motion, Movant requests that he be allowed to conduct discovery and that the Court hold an evidentiary hearing on his claims.   [*Doc. 1* at 21].   Movant also filed a ***Motion for Appointment of Counsel and Supporting Declaration*** (*Doc. 23*) on October 5, 2015.   The Court finds that an evidentiary hearing is unnecessary on all but one of Movant's claims because, as discussed above, the parties' filings and the record of this case conclusively show that he is entitled to no relief on all but one of his claims.   *See* 28 U.S.C. § 2255(b) (explaining that the Court must hold an evidentiary hearing on a § 2255 motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief").   However, the Court is unable to determine from the current record that Movant's claim that Mr. Carreon failed timely to communicate his acceptance of a plea offer is conclusively without merit.   Therefore, the Court

intends to hold an evidentiary hearing on that single claim and to exercise its discretion to appoint counsel to assist Movant with the preparation and presentation of that specific claim, once an Order of dismissal is entered on the remaining claims.   Accordingly, Movant's pending request for discovery, is **DENIED, without prejudice**, at this time.

## IV.   Conclusion

**IT IS HEREBY RECOMMENDED,** for the reasons stated above, that Movant's § 2255 motion [*Doc. 1*] be **DENIED** as to all claims other than his claim that his trial counsel failed to properly communicate Movant's acceptance of a 15-year plea offer to the prosecution, resulting in withdrawal of that offer, and that all other claims made in this Case be **DISMISSED with prejudice**.


**LOURDES A. MARTÍNEZ**
**UNITED STATES MAGISTRATE JUDGE**